FILED
06 SEP 20 AM 9:46
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
DEPUTY

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

RINCON BAND OF LUISENO MISSION INDIANS OF THE RINCON RESERVATION, a/k/a RINCON SAN LUISENO BAND OF MISSION INDIANS a/k/a RINCON BAND OF LUISENO INDIANS,

Plaintiff,

vs.

ARNOLD SCHWARZENEGGER, Governor of California; WILLIAM LOCKYER, Attorney General of California; STATE OF CALIFORNIA,

Defendant.

CASE NO. 04cv1151 W (WMc)

**AMENDED RULING RE: CLOSURE OF COMPACT NEGOTIATIONS**

Hearing Date: September 6, 2006
Time: 9:00 a.m.

## I. INTRODUCTION

Pursuant to this Court's Order dated July 24, 2006, the parties submitted briefing on the issue of when the administrative record should close with respect to the negotiations between Rincon Band of Luiseno Indians ("Plaintiff" or "Rincon") and the State of California over Plaintiff's request for an amendment to its existing tribal-state class III gaming compact. Plaintiff filed its Brief on August 11, 2006. On August 25, 2006, Defendants Arnold Schwarzenegger, William Lockyer, and the State of California, (collectively, "Defendants" or the "State") filed their Response. Plaintiff filed its Reply brief on August 30, 2006.

## II. BACKGROUND

This case arises from an alleged breach of the terms of a tribal-state class III gaming compact (the "Compact") as required by 25 U.S.C. §2710 of the Indian Gaming Regulatory Act ("IGRA" or the "Act"). Specifically, Plaintiff alleges that Defendants failed to fulfill its obligations of the Compact in sections 4.3.3 and 12.3 to negotiate a compact amendment in good faith. (*See* Fourth Claim for Relief.) Further, Plaintiff alleges that Defendants have not fulfilled the requirement in section 9.1 of the Compact to participate in a meet and confer regarding whether Defendants had breached the Compact. (*See* Third Claim for Relief.)

On July 24, 2006, the parties appeared on a telephonic status conference to discuss the progress of the case. At the conference, the parties' through counsel informed the Court that they could not agree on the issue of whether party negotiations that occurred after the filing of Plaintiff's lawsuit should be considered in determining whether the State acted in good faith during compact negotiations. The Court ordered briefing on that issue. After careful consideration of the parties' briefing, the papers attached thereto, oral arguments of September 6, 2006, and for the reasons set forth below, **this Court finds that the record of compact amendment negotiations between Plaintiff and Defendants closes on November 3, 2006. Plaintiff is granted leave to supplement its complaint to include information related to negotiations and proposals occurring after June 9, 2004 up to and including November 3, 2006.**

## III. ARGUMENTS

### A. Plaintiff's Argument

#### 1. Plaintiff Asserts That The Record Of Negotiations Must Evolve Throughout The Lawsuit

Rincon filed its complaint on June 9, 2004. During the two-year period that the instant case has been pending, both Rincon and the State agree that the parties have continued to negotiate, but have been unable to conclude a compact. (Plaintiff's Brief, p. 4, ln. 18-20; Defendants' Response p. 3, ln.3-5.) Rincon states that on November 10, 2005, the State submitted an "on-the-record" offer to it, and argues that because the offer was on-the-record the State also meant for that offer to be included as part of the administrative record. (Plaintiff's Brief, p. 4, ln. 20-23.) Rincon further

asserts that an offer it made to the State on May 5, 2006 should also be included in the administrative record for the Court's consideration because Plaintiff submitted it as an on-the-record offer. (Plaintiff's Brief, p. 4, ln. 23-24.) Notably, in its Reply, Rincon points to the fact that the State, in support of its March 2006 Motion for Protective Order represented to the Court that there was no need for discovery in this action because it did not dispute that negotiation sessions between the parties led to two Compact proposals by the State and two counter proposals by Rincon, which were made after the June 9, 2004 filing. (Plaintiff's Reply, p. 3, ln. 6-26.) Plaintiff notes that documents memorializing the later negotiations and proposals were attached to the March 2, 2006 Declaration of Peter Kaufman, Esq., counsel for the State. Id.

Rincon also adds that by allowing the parties' on-going negotiations, both on and off-the-record, to be considered by the Court, the IGRA's policy of "court supervised negotiation" would be furthered. (Plaintiff's Brief, p. 5, ln. 5-8.) To this end, Plaintiff has submitted a proposed scheduling order for the Court's consideration and requests that the Court "permit Rincon to supplement its Complaint to address the negotiations that have occurred since the Complaint was originally filed." (Plaintiff's Brief, p. 8, ln. 16-18, Exhibit A to Plaintiff's Brief.)

**B. Defendants' Argument**

**1. Defendants Assert That The Record Of Negotiations Is Closed As Of June 9, 2004, The Date Plaintiff Filed Its Complaint.**

The State contends that the record of negotiations between the parties should be deemed closed as of June 9, 2004 (the date Plaintiff filed its complaint) because Plaintiff has failed to timely amend or supplement its complaint. The State argues further that only negotiations occurring before the filing of Plaintiff's complaint are presently alleged. (Defendants' Response, p. 2, ln. 16-20.)

The State also contends that Plaintiff's interpretation of the policy behind the Act is overbroad. The State argues that the IGRA did not intend for the courts to supervise, schedule or manage compact negotiations, but rather to insure that the State would not improperly preclude tribal class III gaming altogether. (Defendants' Response, p. 4, ln. 20-26.) The State objects to Plaintiff's proposed scheduling order contending that the proposed order does not make allowances

for: (1) a period of time for the Court to make its determination on the State's good faith before ordering the State, if necessary, to conclude a compact; (2) proper preparation and filing time on any anticipated cross-motions for summary judgment; and (3) a period of time for Plaintiff to file a motion for leave to amend and/or supplement its complaint and any response thereto. (Defendants' Response, pp. 7-8.) Defendant did not submit a proposed alternative scheduling order with its briefing.

## IV. STANDARD

Where a case management scheduling order under Federal Rule of Civil Procedure ("Fed.R.Civ.P.") 16(b) sets a deadline for amending the pleadings and the deadline has passed, the liberal policy regarding amendment of pleadings under Fed.R.Civ.P. 15(a) no longer applies. Coleman v. Quaker Oats Co., 232 F.3d 1271, 1294 (9th Cir. 2000). Leave of Court must be given and good cause must be shown in order to modify the Court's scheduling order. See Fed. R. Civ. P. 16(b); Johnson v. Mammoth Recreations, Inc., 975 F.2d 604, 609 (9th Cir. 1992).

## V. DISCUSSION

The Act does not specify the time period that should be evaluated in determining whether the State negotiated in good faith. In Re Indian Gaming Related Cases, 147 F. Supp. 2d 1011, 1015 (N.D. Calif. 2001). However, it appears from case law interpreting issues arising under the Act that it is possible for the Court to consider negotiations that occur *after* the filing of a complaint in its determination of whether the State negotiated in good faith. In Re Indian Gaming Related Cases (Coyote Valley), 331 F.3d 1094, 1107 (9th Cir. 2003) (allowing the Coyote Valley Band of Pomo Indians to reference negotiations between it and both the Wilson and Davis Administrations in its action for an order requiring the State to negotiate in good faith.)

Typically, in order for a plaintiff to be able to reference such after-filing negotiations, he must abide by the Federal Rules of Civil Procedure and orders of the Court in conjunction with those rules. For example, in In Re Indian Gaming Related Cases, the Coyote Valley Band of Pomo Indians ("Coyote Valley") filed a complaint alleging lack of good faith negotiation by the Wilson Administration. After Coyote Valley's complaint was filed, a new administration under Grey Davis took office and also rejected Coyote Valley's proposed modifications to its compact. In

order to place the more recent negotiations, which happened after the complaint was filed, at issue in its suit against the State, Coyote Valley ***timely amended*** the complaint to allege a lack of good faith negotiation by both the Wilson and Davis Administrations. In Re Indian Gaming Related Cases, 331 F.3d at 1107.

In the instant action, the Court's December 19, 2005 Scheduling Order provides: "Any motion to join other parties, to amend the pleadings, or to file additional pleadings shall be filed ***on or before December 30, 2005***." Plaintiff was dilatory and should have amended its complaint on or before December 30, 2005, to include negotiations that occurred during the 18-month period between the filing of its complaint and the deadline for supplementing pleadings. However, it did not. Rule 16, requiring good cause to modify the Court's scheduling order, is now controlling. Coleman, 232 F.3d at 1294; Johnson, 975 F.2d at 609.

The Court would have been strongly inclined to limit the administrative record to June 9, 2004 as argued by the State. See Johnson, 975 F.2d at 609-610 (noting that "a scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril.'") However, the Court finds Rincon has demonstrated good cause to allow modification of the Court's December 19, 2005 Scheduling Order and supplementation of Plaintiff's complaint in light of the State's reliance on later negotiations between the parties in support of its Motion for Protective Order, which was granted by this Court's Order dated April 11, 2006. [Docket Nos. 67, 68, 69, 70 and 79] Specifically, the State referenced, and attached as evidence in support of its Motion, documents memorializing negotiations and on-the-record proposals between the parties that occurred after June 9, 2004 through January 27, 2006. (See Doc. No. 69, State's Memorandum of Points & Authorities, p.5, ln. 22-27, p. 6, ln. 13-18; Doc. No. 70, Peter Kaufman Decl., paragraphs 9-13, Exhs. 4-8.)

To prevent Plaintiff from referencing these later negotiations and proposals, to which the State has impliedly consented, would be unfair and prejudicial to Plaintiff. (See e.g. Fed. R. Civ. P. 15(b) "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to

raise these issues may be made upon motion of any party at any time.")

The parties both agree that negotiations between them occurred well after the June 9, 2004 filing of plaintiff's complaint. (Plaintiff's Brief, p.4, ln. 18-24; Defendants' Response, p.3, ln.3-5.) In addition, the parties represented at the September 6, 2006 Oral Argument that both parties made on-the-record offers to each other after the June 9, 2004 filing date. At the oral argument, Plaintiff suggested November 3, 2006 as the closing date of the administrative record. The Court finds that the administrative record shall consist of all on-the-record offers and the negotiations leading up to those on-the-record offers until November 3, 2006. The Court will consider only those negotiations up to and including November 3, 2006 in its determination of good faith.

## VI. CONCLUSION AND ORDER THEREON

In light of the foregoing, the **Court finds that the record of compact amendment negotiations between Plaintiff and Defendants closed on November 3, 2006. The Court further finds good cause to permit Plaintiff to supplement its complaint to include information related to negotiations and proposals occurring after June 9, 2004 up to and including November 3, 2006.**

Plaintiff shall file and personally serve its Amended Complaint **on or before December 4, 2006.**

Defendant shall file and personally serve its Answer to Plaintiff's First Amended Complaint **on or before December 22, 2006.**

Any cross-motions for summary judgment shall be filed and personally served **on February 5, 2007.**

Any cross-oppositions to a motion for summary judgment shall be filed and personally served **on February 26, 2007.**

///

///

///

///

///

Any cross-replies to a motion for summary judgment shall be filed and personally served **on or before March 12, 2007**.

**IT IS SO ORDERED.**

Dated: September 19, 2006



WILLIAM McCURINE, JR.
United States Magistrate Judge

Copy to:

ALL PARTIES AND COUNSEL OF RECORD